**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ROBERTO VÁZQUEZ-RAMOS, et al. | |
| Plaintiffs | Civil No. 19-1527 (SCC) |
| vs. | |
| TRIPLE S SALUD, INC., et al. | |
| Defendants | |

**TRIPLE-S'S ANSWER TO AMENDED COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW defendant TRIPLE S SALUD, INC. (hereinafter "Triple S"), by and through its undersigned counsel, and very respectfully states and prays:

I.      **JURISDICTION AND VENUE**

1.1. This Honorable Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 for 28 U.S.C. § 1337(a) over the foregoing claims seeking declaratory and injunctive relief for violations of the Sherman Act, 15 U.S.C. § 1, et seq. Supplemental jurisdiction is sought pursuant to 28 U.S.C. § 1367 for claims arising under the Puerto Rico antitrust legislation, 10 P.R. Laws Ann. § 257, et seq., as well as for claims under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141-5142.

**Triple-S's Response**: The allegations contained in paragraph 1.1 are conclusions of law or non-factual allegations to which no answer is required.  Insofar as an answer is deemed required, Triple-S accepts the Court has subject matter jurisdiction over the claims under the Sherman Act, and has supplemental jurisdiction over the state law claims provided it retains jurisdiction over the federal claims and the state law claims derive from the same nucleus of operative facts as the federal claims. The rest of the paragraph is denied.

1.2. The District of Puerto Rico is the proper venue to hear this case, as per 28 U.S.C. § 1391(b)(2), as all of the relevant events occurred within the territorial limits of the Commonwealth of Puerto Rico.

**Triple-S's Response**: The allegations contained in paragraph 1.2 are conclusions of law or non-factual allegations to which no answer is required. Insofar as an answer is deemed required, Triple-S accepts that venue is proper in this District. The rest of the paragraph is denied.

## II.    THE PARTIES

2.1. Plaintiff Roberto Vázquez-Ramos is a licensed physician and a board-certified urologist who is authorized to engage in the practice of medical urology in Puerto Rico. His main office is located in the City of Aguadilla, Puerto Rico.

**Triple-S's Response**: Triple-S accepts, based on the most current information on its records, that Plaintiff Roberto Vázquez-Ramos is a licensed physician and a board-certified urologist who is authorized to engage in the practice of medical urology in Puerto Rico. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where plaintiff Vázquez-Ramos's main office is located.

2.2. Plaintiff Irma Luz Rivera-Ramos is plaintiff Vázquez-Ramos' wife and they are married under the economic regime known under Puerto Rico law as a conjugal partnership, which is charged with the administration of all assets and liabilities acquired during their marriage.

**Triple-S's Response**: Triple-S denies the allegations in paragraph 2.2 because it currently lacks sufficient information to ascertain the veracity of the statements made therein.

2.3. Plaintiff the Vázquez-Rivera Conjugal Partnership is the legal entity generated upon plaintiffs Vázquez-Ramos and Rivera-Ramos' marriage.

**Triple-S's Response**: Triple-S denies the allegations in paragraph 2.3 because it currently lacks sufficient information to ascertain the veracity of the statements made therein.

2.4. Plaintiff Javier E. Colón-Irizarry is a licensed physician and a board-certified urologist who is authorized to engage in the practice of medical urology in Puerto Rico. His main office is located in the City of Mayagüez, Puerto Rico.

**Triple-S's Response**: Triple-S accepts, based on information and belief, that Plaintiff Javier E. Colón Irizarry is a licensed physician and a board-certified urologist who is authorized

to engage in the practice of medical urology in Puerto Rico. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where plaintiff Colón-Irizarry's main office is located.

2.5. Plaintiff Advanced Urology Group, LLC is a, for-profit, domestic legal entity created on 2015 for which plaintiff Colón-Irizarry performs a portion of his professional work. This entity's main offices are located in the City of Mayagüez, Puerto Rico.

**Triple-S's Response**: Triple-S accepts, based on information and belief, that Advanced Urology Group, LLC is a for-profit, domestic legal entity and that Plaintiff Javier E. Colón Irizarry performs a portion of his professional work for it. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where does the entity's main office is located, and the year it was created.

2.6. Plaintiff Luis Manuel Muñiz-Colón is a licensed physician and a board-certified urologist who is authorized to engage in the practice of medical urology in Puerto Rico. His main office is located in the City of San Germán, Puerto Rico.

**Triple-S's Response**: Triple-S accepts, based on information and belief, that Plaintiff Luis Manuel Muñiz-Colón is a licensed physician and a board-certified urologist who is authorized to engage in the practice of medical urology in Puerto Rico. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where his main office is located.

2.7. Plaintiff West Urology Group, PSC is a, for-profit, domestic professional services corporation chartered in 2014 for which plaintiff Muñiz-Colón performs a portion of his professional work. This entity's main offices are located in the City of San Germán, Puerto Rico.

**Triple-S's Response**: Triple-S accepts, based on information and belief, that West Urology Group, PSC is a for-profit, domestic professional services corporation and that Plaintiff Muñiz-Colón performs a portion of his professional work for it. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where does the entity's main office is located, and the year it was created.

2.8. Plaintiff Juan M. Colón-Rivera is a licensed physician and a board-qualified urologist who is authorized to engage in the practice of medical urology in Puerto Rico. His main office is located in the City of Mayagüez, Puerto Rico. This plaintiff's claim is limited to co-defendant MSO of Puerto Rico, Inc. Hence, when we refer to "plaintiffs" in the context of the claims asserted against the other defendants, such statement excludes this plaintiff.

**Triple-S's Response**: Triple-S accepts, based on information and belief, that Plaintiff Juan M. Colón-Rivera is a licensed physician and a board-certified urologist who is authorized to engage in the practice of medical urology in Puerto Rico. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where his main office is located. In addition, to the extent that Colón-Rivera's claim is limited to co-defendant MSO of Puerto Rico, and claims against this co-defendant have been dismissed, paragraph 2.8 is irrelevant.

2.9. Plaintiff Caribbean Urocentre, CSP is a, for-profit, domestic professional services corporation chartered in 2006 for which plaintiff Colón-Rivera performs a portion of his professional work. This entity's main offices are located in the City of Mayagüez, Puerto Rico. This plaintiff's claim is limited to co-defendant MSO of Puerto Rico, Inc. Hence, when we refer to "plaintiffs" in the context of the claims asserted against the other defendants, such statement excludes this plaintiff.

**Triple-S's Response**: Triple-S accepts, based on information and belief, that Caribbean Urocentre, CSP is a for-profit, domestic professional services corporation and that Plaintiff Colón-Rivera performs a portion of his professional work for it. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where does the entity's main office is located, and the year it was created. In addition, to the extent that Colón-Rivera and Urocentre's claim are limited to co-defendant MSO of Puerto Rico, and claims against this co-defendant have been dismissed, paragraph 2.9 is irrelevant.

2.10. Defendant Triple-S Salud, Inc., is a, for-profit, domestic corporation chartered in 2012 that is engaged in the business of health insurance in Puerto Rico. Its main offices are located in San Juan, Puerto Rico.

**Triple-S's Response**: Triple-S admits that it is a for-profit, domestic corporation that is engaged in the business of health insurance in Puerto Rico. Its main offices are located in San Juan, Puerto Rico. The rest of paragraph 2.10 is denied.

2.11. Defendant Héctor M. Rodríguez-Blázquez is a licensed physician and a board-certified urologist who is authorized to engage in the practice of medical urology in Puerto Rico. His main office is located in the City of Mayagüez, Puerto Rico.

**Triple-S's Response**: Triple-S admits that Héctor M. Rodríguez-Blázquez is a licensed physician and a board-certified urologist who is authorized to engage in the practice of medical urology in Puerto Rico. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where his main office is located.

2.12. Defendant Urologics, LLC, is a, for profit, domestic legal entity that is wholly or largely owned by co-defendant Rodríguez-Blázquez, which is engaged in the business of providing medical urology services. Its main offices are located in the City of Mayagüez, Puerto Rico.

**Triple-S's Response**: Triple-S accepts, based on information and belief, that Urologics, LLC, is a, for profit, domestic legal entity, which is engaged in the business of providing medical urology services. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where does the entity's main office is located, and what percentage of ownership Rodríguez-Blázquez has in it.

2.13. Defendant Urologist, LLC is a, for profit, domestic legal entity that is wholly or largely owned by co-defendant Rodríguez-Blázquez, which is engaged in the business of providing medical urology services. Its main offices are located in the City of Mayagüez, Puerto Rico.

**Triple-S's Response**: Triple-S accepts, based on information and belief, that Urologist, LLC, is a, for profit, domestic legal entity, which is engaged in the business of providing medical urology services. Triple-S denies the rest of the allegations because it currently lacks sufficient information to ascertain where does the entity's main office is located, and what percentage of ownership Rodríguez-Blázquez has in it.

2.14. Defendant MSO of Puerto Rico, LLC, is a domestic limited liability company that is engaged in the administration of Medicare Advantage health insurance, specifically with "*Medicare y Mucho Más*" and "Preferred Medical Card" (hereinafter referred to as "MMM" and "PMC", respectively).

**Triple-S's Response**: Triple-S admits paragraph 2.14, based on information and belief.

2.15. Defendant ABC Insurance Company is a legal entity whose actual name is not yet known that may be liable for the damages proximately caused by one or more of the defendants.

**Triple-S's Response**: Triple-S denies the allegations in paragraph 2.15 because it currently lacks sufficient information to ascertain the veracity and accuracy of the statement.

2.16. Defendant John Doe is a natural person or legal entity whose name is not yet known that participated with the named defendants in their refusal to deal practices or otherwise conspired with them to engage in violations of federal and Puerto Rico antitrust law.

**Triple-S's Response**: Triple-S denies the allegations in paragraph 2.16 because it currently lacks sufficient information to ascertain the veracity and accuracy of the statement.

2.17. Plaintiffs wish to stress the fact that only Dr. Juan M. Colón-Rivera, Caribbean Urocentre, CSP and Dr. Roberto Vázquez-Ramos are asserting claims against co-defendant MSO of Puerto Rico, LLC. The remaining plaintiffs are only suing Triple S Salud, Inc., Dr. Hector M. Rodríguez-Blázquez, Urology, LLC and Urologics, LLC.

**Triple-S's Response**: The allegations contained in paragraph 2.17 are clarifications as to the scope of the claims brought by different plaintiffs and not statements regarding the merits of the Amended Complaint. As such, no response is required. If a response is required, Triple-S denies paragraph 2.17.

### III. THE FACTS

3.1. Ever since Puerto Rico was allowed a charter for self-governance under the 1900 and 1917 organic acts, health services to citizens of limited financial means was provided by the local government is publicly owned facilities wherein physicians employed and/or retained under contract by the local authorities tended to said population's health concerns.

**Triple-S's Response**: The allegations contained in paragraph 3 are historical references regarding health services in Puerto Rico and not statements regarding the merits of the Amended Complaint. As such, no response is required. If a response is required, Triple-S denies paragraph 3.1.

3.2. In the year 1993, a major overhaul of the Puerto Rico public healthcare system was performed by means of Act Number 72 of September 7, 1993, 24 P.R. Laws Ann. § 7001, et seq., which has since been amended on multiple occasions.

**Triple-S's Response**: Triple-S admits that Act Number 72 was approved in 1993 and has been amended. The rest of paragraph 3.2 is denied as drafted.

3.3. The largest paradigm shift brought about by the 1993 reform (which was later rebranded as "*Mi Salud*" medical insurance plan[3]) was the privatization of most public health facilities and the creating of a public healthcare insurance scheme similar to that used in the private

sector that would be funded mostly through Medicaid grants and funds collected from the Commonwealth and the municipal governments.

**Triple-S's Response**: Triple-S admits that the 1993 reform, which established the Government Health Plan (GHP) was later rebranded as Mi Salud, and in 2018 as Vital. Triple-S also admits that the GFP is funded mostly funded through Medicaid grants and funds collected from the Government of Puerto Rico and the municipal governments.

3.4. Upon the approval and implementation of the healthcare reform, the population that qualified for coverage was split into 8 geographic regions in which private health care providers formed independent practice associations that each handled a number of patients.

**Triple-S's Response**: Triple-S admits paragraph 3.4, but affirmatively avers that beginning in November 2018, the Government rebranded its GHP to "Vital" and abandoned the regional model in favor of a single market or island-wide coverage model.

3.5. The statute created a public entity (separate from the Commonwealth government itself) known as Health Insurance Administration of Puerto Rico (hereinafter referred to as "ASES" for its Spanish language acronym), which in turn entered into contracts with private health insurance companies for the delivery of the services required under the program.

**Triple-S's Response**: Triple-S admits paragraph 3.5, and affirmatively avers that ASES was created by Act 72 of 1993 which, in turn, sets forth ASES's authority, duties, rights and obligations.

3.6. The insurance companies are responsible for retaining the healthcare providers that are necessary to provide the requisite services requires by the population in the region that they serve.

**Triple-S's Response**: Triple-S admits paragraph 3.6, but affirmatively avers that beginning in November 2018, the Government rebranded its GHP to "Vital" and abandoned the regional model in favor of a single market or island-wide coverage model. Triple-S further avers that the GHP works under a managed care model, and it affords the managed care organizations contracted by ASES, like Triple-S, control over the composition of provider networks to service GHP beneficiaries.

3.7. Also relevant to the instant action is the Medicare Advantage Program (also known as "Medigap Insurance" or "Medigap Coverage") and, as such, is restricted to patients who qualify for benefits under the Medicare Act (i.e., Title XVIII of the Social Security Act), 42 U.S.C. § 1395,

et seq. In other words, this is a medical insurance program that is essentially available only to retirees that, throughout their productive years, made the requisite payments into the Medicare Program.

**Triple-S's Response**: The allegations contained in paragraph 3.7 are references to laws or non-factual allegations to which no answer is required. Insofar as an answer is deemed required, Triple-S denies it as drafted.

3.8. As recently explained by the Eleventh Circuit:

Medicare Advantage is a modern adaptation of the momentous 1960s-era program. Traditional Medicare uses a fee-for-service payment model, whereby the more services physicians perform, the more money they earn. After Medicare was enacted, however, experts came to realize that this payment structure encourages healthcare providers to order more tests and procedures than medically necessary. See Thomas L. Greaney, Medicare Advantage, Accountable Care Organizations, and Traditional Medicare: Synchronization or Collision?, 15 Yale J. Health Pol'y, L. & Ethics 37, 38, 41 (2015).

Medicare Advantage seeks to improve the quality of care while safeguarding the public fisc by employing a "capitation" payment system. Capitation means an amount is paid per person. Capitation, Black's Law Dictionary (10th ed. 2014). Under Medicare Advantage's capitation system, private health insurance organizations provide Medicare benefits in exchange for a fixed monthly fee per person enrolled in the program— regardless of actual healthcare usage. These organizations pocket for themselves or pay out to their enrollees' providers the difference between their capitation revenue and their enrollees' medical expenses, creating an incentive for the organizations to rein in costs.

United States ex rel. Silingo v. Wellpoint, Inc., 904 F.3d 667, 672 (11th Cir. 2018).

**Triple-S's Response**: The allegations contained in paragraph 3.8 are references to case law or non-factual allegations to which no answer is required. Insofar as an answer is deemed required, Triple-S admits that the quote from United States ex rel. Silingo v. Wellpoint, Inc., 904 F.3d 667, 672 (11th Cir. 2018), is accurate.

3.9. One of the largest Medicare Advantage providers in Puerto Rico is MMM, whose physicians are retained by and are under contract with co-defendant MSO of Puerto Rico, LLC (hereinafter referred to as "MSO").

**Triple-S's Response**: Paragraph 3.9 is not addressed to Triple-S. As such no response is required from Triple-S. If a response were required, Triple-S denies paragraph 3.9.

3.10. As of the end of May of 2015, plaintiffs Vázquez-Ramos, Colón-Rivera and Caribbean Urocentre, CSP were, by virtue of a contract with MSO, MMM/PMC providers of urology services to qualified western region participants enrolled with said insurer.

**Triple-S's Response**: Paragraph 3.10 is not addressed to Triple-S. As such no response is required from Triple-S. If a response were required, Triple-S denies paragraph 3.10.

3.11. At all times relevant to this action, Triple-S Salud, Inc. (hereinafter referred to as "Triple-S") has been the private health insurance provider retained by ASES to provide services for over 200,000 patients in the Western Region of Puerto Rico.

**Triple-S's Response**: Triple-S denies paragraph 3.11 as drafted. Triple-S affirmatively avers that between 2015 and 2018, its GHP-Mi Salud beneficiaries were located in the Western Puerto Rico region. Beginning in November 2018 the GHP was rebranded as "Vital" and the regional model was abandoned in favor of a single market or island-wide coverage model.

3.12. Up until the summer of 2015, all plaintiffs were under contract with Triple-S to provide medical urology services in the Western Region which, due to their respective strategic locations throughout the area, efficiently served the qualified population.

**Triple-S's Response**: Triple-S admits that up until 2015, all plaintiffs (except the doctors' spouses and the conjugal partnerships) were participating providers in the GHP's Western Region. The rest of paragraph 3.12 is denied as drafted.

3.13. Moreover, the availability of more than one medical urology provider guaranteed the patients' statutory right (24 P.R. Laws Ann. § 7036a(3)(h)) to freely select his/her provider.

**Triple-S's Response**: Paragraph 3.13 only contains a conclusion of law for which no response is required. If a response is required, Triple-S denies paragraph 3.13.

3.14. On or around the beginning of the year 2015, unbeknown to plaintiffs, defendants Triple-S and Rodríguez-Blázquez began conversations aimed at having the latter become the sole and exclusive provider of urology services for *Mi Salud* patients in Western Puerto Rico, as well

as engaging in conversations with MSO to concoct a similar monopolistic arrangement for MMM/PMC patients.

**Triple-S's Response**: Triple-S admits that around 2015, Triple-S and Rodríguez-Blázquez had conversations aimed at establishing a contractual relationship for the latter to provide, through his medical group, urology services for *Mi Salud* patients in Western Puerto Rico. Triple-S also considered other providers and contractual arrangements. However, it ultimately contracted with Rodríguez-Blázquez's group based on a capitation model. Under a capitated model, the payment remains the same regardless of how many times the beneficiary visits the physician. The rest of paragraph 3.14 is denied. Triple-S further denies having ever engaged in monopolistic activities with any of the co-defendants. Triple-S's contract with Urologist was approved by ASES.

3.15. The clear objective of the defendants was to create a monopoly in the provision of urology services to the substantial *Mi Salud* and MMM/PMC medical population in Western Puerto Rico.

**Triple-S's Response**: Paragraph 3.15 is denied.

3.16. By refusing to deal with plaintiffs (by not renewing their contracts) and other qualified medical providers, Triple-S was in fact eliminating any competition between urologists within the *Mi Salud* population, which constitutes an unlawful boycott under antitrust law.

**Triple-S's Response**: Paragraph 3.16 is denied. Triple-S further avers that it has never engaged in monopolistic activities with any of the co-defendants. Triple-S's contract with Urologist was approved by ASES.

3.17. Defendant Rodríguez-Blázquez gladly acquiesced to Triple-S's and MSO's monopolistic proposals, using Urologics, LLC (hereinafter referred to as "Urologics") and/or Urologist, LLC (hereinafter referred to as "Urologist") as a front and an *alter ego*, as there is little, if any, distinction regarding where the natural person ends and the legal entity begins. Moreover, documents in possession of plaintiffs point to Urologics being the entity that entered into a monopolistic, exclusive dealing arrangement with Triple-S and MSO. However, in moving to dismiss the instant action, Rodríguez-Blázquez averred that it was Urologist that entered into such arrangement. Since the full extent of the inter-entity relationship between Urologics and Urologist

is not yet known, we referred to those defendants in an "and/or" fashion, as the matter should be sorted out during discovery.

**Triple-S's Response**: Paragraph 3.17 is denied. Triple-S further avers that it has never engaged in monopolistic activities with any of the co-defendants. Triple-S's contract with Urologist was approved by ASES.

3.18. This new scheme of limiting urology services for *Mi Salud* patients in Western Puerto Rico, while highly prejudicial to the over 200,000 souls that cannot afford private health insurance, served defendants' economic interests just fine.

**Triple-S's Response**: Paragraph 3.17 is denied. Triple-S further avers that it has never engaged in monopolistic activities with any of the co-defendants. Triple-S's contract with Urologist was approved by ASES.

3.19. In the case of Triple-S, the one-provider model made it more difficult for patients to obtain urology services, thereby decreasing the amount of consultations and medical procedures that the insurance carrier has to pay for in any given year, not to mention that defendants negotiated certain discounts in favor of Triple-S, on account of the exclusive provider status that was being granted.

**Triple-S's Response**: Triple-S admits that the capitation contract with Urologist contemplated savings for Triple-S, mainly on account of the efficiencies of the capitation model. The rest of paragraph 3.19 is denied. Triple-S further avers that it has never engaged in monopolistic activities with any of the co-defendants. Triple-S's contract with Urologist was approved by ASES.

3.20. Moreover, the agreement between Triple S and Urologics and/or Urologist included a clause providing that after October 1, 2015, any savings on certain urologic proceedings would be split in equal parts between them.

**Triple-S's Response**: Triple-S admits that the capitation contract with Urologist contemplated savings for Triple-S, mainly on account of the efficiencies of the capitation model. The rest of paragraph 3.20 is denied as drafted. Triple-S further avers that it has never engaged in monopolistic activities with any of the co-defendants. Triple-S's contract with Urologist was approved by ASES, and its terms speak for themselves.

3.21. Plaintiffs have learned that since defendants entered into their monopolistic arrangement, the number of prostate cancer patients treated by Rodríguez-Blázquez/Urologics/Urologist that have been physically castrated in lieu of more effective, albeit more expensive, drug treatment has increased resulting in an inferior quality of life for these patients and in more money in defendants' bank accounts.

**Triple-S's Response**: Triple-S denies paragraph 3.21.

3.22. Along the line of urologic procedures, not only did Triple S and MSO grant Rodríguez-Blázquez/Urologics regional exclusivity over urology consultations but it also granted said parties, exclusivity over lithotripsy procedures, ceasing referrals to plaintiffs for such endeavors and thus saddling them with a substantial loss of income.

**Triple-S's Response**: Triple-S denies paragraph 3.22 as drafted. Triple-S's contract with Urologist was approved by ASES, and its terms speak for themselves. Triple-S further avers that it has never engaged in monopolistic activities with any of the co-defendants. The GHP program works under a managed care model, and it affords the managed care organizations contracted by ASES control over the composition of provider networks to service GHP beneficiaries. Moreover, the contracts between Urologist and Triple-S do not contain provisions that exclude Plaintiffs (or other urologists) from providing their urology services in Puerto Rico. Plaintiffs' licenses are not limited to the Western Region. They are licensed to practice their profession throughout Puerto Rico. Nothing prevents Plaintiffs in this case from practicing elsewhere in Puerto Rico.

3.23. In the case of Rodríguez-Blázquez and Urologics/Urologist, the monopolistic exclusion of other provider eliminated their competition within the region's *Mi Salud* population creating a business environment in which billing services to said population became the proverbial "shooting fish in a barrel".

**Triple-S's Response**: Triple-S denies paragraph 3.23.

3.24. As shall be explained in finer detail further into the foregoing document, Urologics never had the capacity to adequately care for the urologic health of the 200,000+ souls that live in the Western area of Puerto Rico and have been placed in its exclusive care, something that became apparent when plaintiffs and other urology providers were ousted. By this statement, plaintiffs are

not stating that the physicians that provide services for Urologics and/or Urologist (which in the Western Area would mean Dr. Rodriguez -Blázquez) lack the professional competence to serve these patients, but rather that they lack the available manpower to do so.

**Triple-S's Response**: Triple-S denies paragraph 3.24.

3.25. On March 2015 (a time in which defendants' conspiracy to violate antitrust law was in full swing), plaintiffs received a letter from Triple-S advising them that the insurance company had entered into a new contract with ASES (for the administration of *Mi Salud* in regions Metro-North and West), effective April 1, 2015 and advising that, if by May 31, 2015 a new contract had not been signed with Triple-S, plaintiffs would become "non-participating providers".

**Triple-S's Response**: Triple-S admits that in March of 2015 it sent plaintiffs letters informing that the insurance company had entered into a new contract with ASES (for the administration of *Mi Salud* in regions Metro-North and West), effective April 1, 2015 and advising that, if by May 31, 2015 a new contract had not been signed with Triple-S, plaintiffs would become "non-participating providers". The rest of paragraph 3.25 is denied. Triple-S further avers that it has never engaged in monopolistic activities with any of the co-defendants.

3.26. Since defendants were in the midst of organizing their exclusive provider scheme during the time after the letter referred to in the previous paragraph was sent, plaintiffs were never approached with any offer for renewal or any invitation to engage in renewal negotiations, notwithstanding their repeated efforts to engage in such negotiations with Triple S.

**Triple-S's Response**: Triple-S denies paragraph 3.26 as drafted. Triple-S admits that around 2015, Triple-S and Rodríguez-Blázquez had conversations aimed at establishing a contractual relationship for the latter to provide, through his medical group, urology services for *Mi Salud* patients in Western Puerto Rico. Triple-S also considered other providers and contractual arrangements. However, it ultimately contracted with Rodríguez-Blázquez's group based on a capitation model. Under a capitated model, the payment remains the same regardless of how many times the beneficiary visits the physician. Triple-S further denies having ever engaged in monopolistic activities with any of the co-defendants. Triple-S's contract with Urologist was approved by ASES.

3.27. By means of a two-sentence letter dated May 29, 2015, Triple-S informed plaintiffs would have their contracts extended for services rendered up until July 31, 2015.

**Triple-S's Response**: Triple-S admits that on May 29, 2015, it informed plaintiffs that their contracts would be extended for services rendered up until July 31, 2015. The rest of the paragraph is denied as drafted.

3.28. Plaintiffs have, on multiples occasions (several of them, in writing) unsuccessfully sought to have Triple-S and MSO once again retain them as urology providers.

**Triple-S's Response**: Paragraph 3.28 is denied.  The contracts between Urologist and Triple-S do not contain provisions that exclude Plaintiffs (or other urologists) from providing their urology services in Puerto Rico. Plaintiffs' licenses are not limited to the Western Region. They are licensed to practice their profession throughout Puerto Rico. Nothing prevents Plaintiffs in this case from practicing elsewhere in Puerto Rico. During the relevant period, Plaintiffs have been part of Triple-S' network of providers in its commercial and Medicare Advantage lines of business.

3.29. During most, if not all, of the period during which Urologics and/or Urologist has been the exclusive urology provider for the western region's patients, Dr. Rodríguez-Blázquez has been the only urologist in said group with offices within the region.

**Triple-S's Response**: Paragraph 3.29 is denied.

3.30. While the region includes towns as far away from each other as, for example, Aguadilla and San Germán, when the exclusive provider deal was first entered into, Rodríguez-Blázquez only enjoyed clinical hospital privileges in the tiny Dr. Perea Pavía Hospital in downtown Mayagüez, which on more than one occasion required plaintiffs to, notwithstanding their non-participating provider status, treat patients with emergency urological conditions in different hospitals throughout the region billing Triple-S under special emergency invoices, if at all.

**Triple-S's Response**: Paragraph 3.30 is denied as drafted.

3.31. Early into the exclusivity deal, Rodríguez-Blázquez was granted clinical privileges at the Mayagüez Medical Center (hereinafter referred to as "MMC"), which he has handled quite unprofessionally, in detriment of the patients that he is supposed to serve.

**Triple-S's Response**: Paragraph 3.31 is not addressed at Triple-S. Thus, no responsive pleading is required. If a response is required, Triple-S denies paragraph 3.31.

3.32. The MMC's administration has repeatedly complained to Rodríguez-Blázquez for, *inter alia*: 1) his refusal to go to the hospital to examine hospitalized patients, as well as patients in the emergency room, resorting to instead issue medical orders via telephone (without having ever seen the patient); sending non-medical staff to examine patients, ordering the discharge of unexamined patients or ordering them transferred to Dr. Perea Hospital; 2) refusing to answer urology consultations logged in by other members of the hospital's staff; 3) refusing to report to the operating room to tend to consultations made by other physicians regarding patients undergoing surgery; and 4) failing to attend compulsory medical staff meetings.

**Triple-S's Response**: Paragraph 3.32 is not addressed at Triple-S. Thus, no responsive pleading is required. If a response is required, Triple-S denies paragraph 3.32.

3.33. Rodríguez-Blázquez' response to MMC's demands for basic professional competence has been met with demands that the hospital manage its urology consultations the way that he deems proper or otherwise refer the patients to the Dr. Perea Hospital.

**Triple-S's Response**: Paragraph 3.33 is not addressed at Triple-S. Thus, no responsive pleading is required. If a response is required, Triple-S denies paragraph 3.33.

3.34. During a meeting on September 2016, Rodríguez-Blázquez told MMC officials that he would start to properly take care of the hospital's urology patients once he managed to have another urologist join Urologics and/or Urology, referring to his ongoing efforts to incorporate plaintiffs into his monopolistic juggernaut.

**Triple-S's Response**: Paragraph 3.34 is not addressed at Triple-S. Thus, no responsive pleading is required. If a response is required, Triple-S denies paragraph 3.34.

3.35. In true monopolistic fashion, Rodríguez-Blázquez engaged in particularly overt oral and written attempts to recruit plaintiff Javier Colón-Irizarry into Urologics and/or Urology so that he would perform the work at MMC that said party was unable and/or unwilling to do.

**Triple-S's Response**: Paragraph 3.35 is not addressed at Triple-S. Thus, no responsive pleading is required. If a response is required, Triple-S denies paragraph 3.35.

3.36. In the case of plaintiff Muñiz-Colón, Urologics and/or Urologist listed him (without his knowledge or consent) in official documents as a contractor, in order to give the appearance that it was sufficiently staffed to handle the *Mi Salud* population of the region.

**Triple-S's Response**: Paragraph 3.36 is not addressed at Triple-S. Thus, no responsive pleading is required. If a response is required, Triple-S denies paragraph 3.36.

3.37. The situation described in the preceding paragraphs has been brought before Triple-S's attention on multiple occasions by MMC's management, prompting no response, as limiting competition among *Mi Salud* providers (and the economic benefit that such conduct engenders) seems to be more important to this defendant than ensuring that its insured population received acceptable urology services.

**Triple-S's Response**: Triple-S admits that MMC once sent a letter to Triple-S regarding Dr. Rodríguez-Blázquez. The rest of paragraph 3.37 is denied.

3.38. By letter dated March 28, 2017, Kermit Ortiz-Moralez, Esq., legal advisor to MMC informed Triple-S's President, Madeline Hernández-Urquiza about Rodríguez-Blázquez' behavior, its adverse effect on *Mi Salud* patients treated at the hospital and the efforts made by management to secure compliance from this physician and/or Urologics/Urologist, ending with a plea that is directly related to monopolistic practices, to the effect that:

> In attention to what has been previously stated, through the foregoing, MMC requests from Triple-S the immediate cancelation of the exclusive provider contract that it maintains with Urologics for the provision of urology, urologic surgery and lithotripsy in Puerto Rico's Western Health Region and, consequently proceed to directly enter into contracts with other surgeons/urologists that have clinical privileges in the hospital and that reside within the Western Health Region, for the provision of medical/hospital services; without prejudice of Triple-S being able to grant Urologics, as it deems proper, any other similar contract for the provision of medical services in the relevant fields of medicine, so long as such contract not be an exclusive one. (emphasis in the original; translation ours).

**Triple-S's Response**: Triple-S admits that the letter referred to in this paragraph was sent to Triple-S. The rest of paragraph 3.38 is denied.

3.39. Needless to say, defendants' monopolistic behavior has resulted in substantial economic losses for plaintiffs herein, as they have been unable to provide their services to members of the *Mi Salud* population in the Western Health Region.

**Triple-S's Response**: Paragraph 3.39 is denied.

3.40. Dr. Rodríguez-Blázquez and Urologics/Urologist were not content with creating a regional monopoly of *Mi Salud* patients in Western Puerto Rico but it further sought to obtain such regional exclusivity with regards to MMM Medicare Advantage patients.

**Triple-S's Response**: Paragraph 3.40 is denied.

3.41. Just as in the case of Triple S, MSO was happy to oblige and give into the monopolistic pretensions of Rodríguez-Blázquez/Urologics/Urologist, to the detriment of other qualified providers whose contracts were cancelled, including plaintiffs Vázquez-Ramos, Colón-Rivera and Caribbean Urocentre, CSP.

**Triple-S's Response**: Paragraph 3.41 is not addressed at Triple-S. Thus, no responsive pleading is required. If a response is required, Triple-S denies paragraph 3.41.

3.42. The reasons why MSO and Rodríguez-Blázquez/Urologics/Urologist entered into a monopolistic arrangement are essentially the same that we have previously averred with regards to the regional monopoly concocted by the latter and co-defendant Triple S with regards to *Mi Salud* patients.

**Triple-S's Response**: Paragraph 3.40 is denied.

3.43. Plaintiffs' economic losses, based on prior billing to Triple-S, since July 2015 up until today, are estimated in no less than $1,000,000.00 per provider[11], an amount that continues to increase as time goes by. This figure holds true both for loses attributable to collusion with Triple S and those attributable to collusion with MSO by the two plaintiffs asserting claims against said co-defendant.

**Triple-S's Response**: Paragraph 3.43 is denied.

3.44. The damages referred to in the previous paragraph constitute "antitrust injuries" as defined by the Supreme Court, as they are directly linked to defendants' actions eliminating any competition whatsoever in the provision of urology services to *Mi Salud* patients in western Puerto Rico, which effectively prevented them from participating in said market. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489-490 (1977).

**Triple-S's Response**: Paragraph 3.44 is denied.

3.45. Additionally, the illegal exclusion of plaintiffs as qualified urology providers has generated in them profound feelings of anger, anxiety (because the sudden and substantial loss of income), frustration and sadness that are actionable under Puerto Rico tort law and are estimated at no less than $500,000.00 for each individual plaintiff.

**Triple-S's Response**: Paragraph 3.40 is denied.

## IV.    FIRST CAUSE OF ACTION (Sherman Act)

4.1. The Sherman Act allows persons injured to file suit seeking relief in federal court including suits for treble damages, prejudgment interest, injunctive relief and attorney's fees. See 15 U.S.C. §§ 4; 15.

**Triple-S's Response**: The allegations contained in paragraph 4.1 are conclusions of law or non-factual allegations to which no answer is required.  Insofar as an answer is deemed required, Triple-S denies paragraph 4.1.

4.2. While there are valid business reasons why a person or entity may refuse to deal with others engaged in the same industry, where said refusal is fueled by a desire to limit competition, it violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1; 2.

**Triple-S's Response**: The allegations contained in paragraph 4.2 are conclusions of law or non-factual allegations to which no answer is required.  Insofar as an answer is deemed required, Triple-S denies paragraph 4.2. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

4.3. In our Circuit, a violation of Section 2 of the Sherman Act lies where: 1) the defendant possesses monopoly power in the relevant market; and 2) has willfully acquired or maintained that

power by means other than a superior product, business acumen or historic accident. <u>Díaz Aviation Corp. v. Airport Aviation Services</u>, 716 F.3d 256, 265 (1st Cir. 2013), <u>accord United States v. Grinnell Corp.</u>, 384 U.S. 563, 570-571 (1966).

**Triple-S's Response**: The allegations contained in paragraph 4.3 are conclusions of law or non-factual allegations to which no answer is required. Insofar as an answer is deemed required, Triple-S denies paragraph 4.3.

4.4. Triple-S possesses the authority to create a monopoly in the provision of urology services to *Mi Salud* patients in Western Puerto Rico and has in fact awarded such a monopoly to wholly-underqualified defendants Rodríguez-Blázquez and Urologics, a willful action that was motivated solely by a desire to increase defendants' profits. The same holds true for MSO in the context of MMM Medicare Advantage patients.

**Triple-S's Response**: Paragraph 4.4 is denied. Triple-S avers that it has never engaged in any monopolistic activity with co-defendants. The contracts between Urologist and Triple-S do not contain provisions that exclude Plaintiffs (or other urologists) from providing their urology services in Puerto Rico. Plaintiffs' licenses are not limited to the Western Region. They are licensed to practice their profession throughout Puerto Rico. Nothing prevents Plaintiffs in this case from practicing elsewhere in Puerto Rico. Triple-S position as exclusive health insurer under the GHP in the Western Region until November 2018 was a decision made by ASES, not by Triple-S. The GHP operates with public funds and Triple-S carefully administers such funds.

4.5. Exclusive dealing, such as the one at play in the instant case, may be a per se violation of Section 1 of the Sherman Act or if it is found to impair competition when assessed under the so-called "rule of reason". <u>Tampa Elec. v. Nashville Coal Co.</u>, 365 U.S. 320, 333-335 (1961); <u>United States Healthcare, Inc. v. Healthsource, Inc.</u>, 986 F.2d 589, 595 (1st Cir. 1993), both of which may be concluded from the facts of this case.

**Triple-S's Response**: The allegations contained in paragraph 4.5 are conclusions of law or non-factual allegations to which no answer is required. Insofar as an answer is deemed required, Triple-S denies paragraph 4.5. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

4.6. Section 1 of the Sherman Act further proscribes any conspiracy that results in the constraint of trade.

**Triple-S's Response**: The allegations contained in paragraph 4.6 are conclusions of law or non-factual allegations to which no answer is required.  Insofar as an answer is deemed required, Triple-S denies paragraph 4.6. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

4.7. It is undeniable that defendants have colluded to exclude plaintiffs from participation in the *Mi Salud* market solely for purposes of increasing their profits on account of their refusal to deal with plaintiffs.

**Triple-S's Response**: The allegations contained in paragraph 4.7 are denied.

4.8. Plaintiffs are entitled to injunctive relief in the form of an order requiring Triple-S and MSO to break the monopoly created in favor of Rodríguez-Blázquez/Urologics/Urologist, an award of treble damages, prejudgment interest and reasonable attorney's fees, to be assessed under a lodestar calculation. To the extent that Medicaid and Medicare funds are involved, the challenged practices affect interstate commerce.

**Triple-S's Response**: The allegations contained in paragraph 4.8 denied.

### V.    SECOND CAUSE OF ACTION (Puerto Rico Antitrust Law)

5.1. Just like the Sherman Act, the Puerto Rico Antitrust Act allows private parties aggrieved by proscribed conduct to seek judicial redress. 10 P.R. Laws Ann. § 268.

**Triple-S's Response**: The allegations contained in paragraph 5.1 are conclusions of law or non-factual allegations to which no answer is required.  Insofar as an answer is deemed required, Triple-S denies paragraph 5.1. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

5.2. The Puerto Rico Antitrust Act, pretty much adopts the language contained in the Sherman Act that is relevant to the claims being asserted herein and thus, proscribe the same conduct. See 10 P.R. Laws Ann. §§ 258-262; Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 16 (1st Cir. 2003); Coastal Fuels Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 195 (1st Cir. 1996).

**Triple-S's Response**: The allegations contained in paragraph 5.2 are conclusions of law or non-factual allegations to which no answer is required.  Insofar as an answer is deemed required, Triple-S denies paragraph 5.2. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

5.3. Based on the parallels between the Sherman Act and the Puerto Rico legislation, the same facts that constitute a federal violation also constitute a violation of local law and need not be repeated here.

**Triple-S's Response**: The allegations contained in paragraph 5.3 are conclusions of law or non-factual allegations to which no answer is required.  Insofar as an answer is deemed required, Triple-S denies paragraph 5.3. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

5.4. Just as is the case under the Sherman Act, defendants' violations of the Puerto Rico Antitrust Act entitle plaintiffs to injunctive relief to stop the offending conduct, as well as to treble damages.

**Triple-S's Response**: The allegations contained in paragraph 5.4 are denied.

## VI.    THIRD CAUSE OF ACTION (Puerto Rico Tort Law)

6.1. Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141, provides for the allowance of compensatory damages in favor of any person that is injured through the intentional or negligent acts of a third party 6.2. In order to obtain relief under this statute, a plaintiff has to establish the existence of "(i) a compensable injury; (ii) a wrongful act on the defendant's part; and (iii) a sufficiently tight causal nexus between the injury and the wrong". González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 319 (1st Cir. 2009) (citing Puerto Rico Supreme Court precedent).

**Triple-S's Response**: The allegations contained in paragraph 6.1 are conclusions of law or non-factual allegations to which no answer is required.  Insofar as an answer is deemed required, Triple-S denies paragraph 6.1. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

6.2. In order to obtain relief under this statute, a plaintiff has to establish the existence of "(i) a compensable injury; (ii) a wrongful act on the defendant's part; and (iii) a sufficiently tight

causal nexus between the injury and the wrong". <u>González Figueroa v. J.C. Penney P.R., Inc.</u>, 568 F.3d 313, 319 (1st Cir. 2009) (citing Puerto Rico Supreme Court precedent).

**Triple-S's Response**: The allegations contained in paragraph 6.2 are conclusions of law or non-factual allegations to which no answer is required. Insofar as an answer is deemed required, Triple-S denies paragraph 6.2. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

6.3. Article 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5142, provides for the imposition of vicarious liability for the tortious conduct of a person's/entity's employees and/or agents, something that is highly relevant in the context of the claims asserted against the above-captioned corporate defendants.

**Triple-S's Response**: The allegations contained in paragraph 6.3 are conclusions of law or non-factual allegations to which no answer is required. Insofar as an answer is deemed required, Triple-S denies paragraph 6.3. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

6.4. Without the shadow of a doubt, the same actions incurred in by the defendants in violation of federal and local antitrust legislation also constitute a tort under Puerto Rico law.

**Triple-S's Response**: The allegations contained in paragraph 6.4 are denied.

6.5. Nothing precludes a federal antitrust plaintiff for invoking supplemental jurisdiction over derivative state tort claims.

**Triple-S's Response**: The allegations contained in paragraph 6.5 are conclusions of law or non-factual allegations to which no answer is required. Insofar as an answer is deemed required, Triple-S denies paragraph 6.5. Triple-S further avers that it has never engaged in any monopolistic activity with co-defendants.

The prayer for relief is also denied.

**AFFIRMATIVE DEFENSES**

Triple-S, while reserving the right to assert other defenses after discovery proceeds, and without assuming the burden of proof when the burden of proof rests on Plaintiffs, asserts the following separate and independent affirmative defenses in further opposition to the Complaint:

1. Triple-S incorporates by reference all denials and averments contained in the preceding answer to the Amended Complaint and makes them form part of these affirmative defenses

2. The Amended Complaint fails to state a plausible claim upon which relief can be granted.

3. At all times, Triple-S acted diligently meeting the requirements established by law and the applicable contracts and did not act negligently.

4. By reason of its conduct, Plaintiffs are estopped from asserting the claims contained in the Amended Complaint.

5. The Amended Complaint is time-barred under the applicable statutes of limitations.

6. The Amended Complaint is barred by the doctrine of laches.

7. By reason of Plaintiffs' conduct, the Amended Complaint is barred by the doctrine of waiver.

8. The relief requested in the Amended Complaint is barred by the unclean hands doctrine.

9. Plaintiffs did not suffer any actual damages.

10. The Amended Complaint omits necessary parties.

11. The damages claimed in the Amended Complaint are speculative and/or exaggerated.

12. Plaintiffs are not entitled to court costs and expenses or attorney's fees and pre-judgment and post-judgment interest.

13. Any allegation not specifically admitted is denied.

14. At all relevant times, Triple-S has acted as a Managed Care Organization under contract with the Puerto Rico Health Insurance Administration ("ASES" for its Spanish acronym), to administer the benefits under the Government Health Plan ("GHP").

15.    The claims brought by Plaintiffs are barred by the State Action Immunity Doctrine.

16.    Dr. Juan Rivera Colón is already a provider in the Vital line of business.

17.    Any allegations as to MSO of Puerto Rico, LLC refer exclusively to a cause of action dismissed by this Honorable Court through the Opinion and Order dated December 15, 2020 (Docket No. 95), which dismissal was affirmed by the U.S. Court of Appeals for the First Circuit through the Opinion dated December 8, 2022 (Docket No. 104).

18.    Under the same reasoning used by the First Circuit to confirm the dismissal of the claims against MSO of Puerto Rico, LLC, this Court should dismiss the remaining claims.

19.    Plaintiffs cannot establish that the exclusive dealing agreement alleged in the Amended Complaint is an unlawful agreement under section 1 of the Sherman Act, 15 U.S.C. § 1, or an unlawful acquisition and use of monopoly power under section 2 of the Sherman Act, *Id.* § 2.

20.    Plaintiffs do not plead a Section 2 claim against Dr. Rodríguez-Blázquez.

21.    Boycotts occur in the situation of horizontal agreements among direct competitors.  Triple-S Salud, Inc. and Urologics and Urologist do not compete and have never competed.

22.    Plaintiffs are not efficient enforcers because they are the competitors being excluded. The proper plaintiffs are the patients who are allegedly receiving inferior services.

23.    The arrangement that Plaintiffs complain of is a vertical agreement subject to the rule of reason analysis.

24.    Vertical agreements do not qualify as "group boycotts" or unlawful refusals to deal.

25.    Plaintiffs cannot establish a cognizable antitrust injury which is injury to competition or that the competitive process has been harmed.

26.    Plaintiffs cannot establish an adverse effect on competition in the relevant market.

27.    Plaintiffs are licensed to practice in the entire region of Puerto Rico.

28.    At all relevant times, Plaintiffs could provide, and have been providing, urology services to patients subscribed to any health insurance plan, commercial plans, Medicare Advantage plans, or even to uninsured patients paying out-of-pocket, both within "Western Puerto Rico" and in all of Puerto Rico.

29.    In an antitrust claim by a shut-out supplier, market impact has to be gauged against the available market for the supplier including all potential customers of the impacted product, not just a carve-out for health care financed, or insurance reimbursed products.

30.    Plaintiffs' definition of the relevant market as "Western Puerto Rico" is unduly restrictive and is not a permissible sub-market, as it does not include all the potential customers for urology services of the alleged shut-out supplier.

31.    At all relevant times, there remained ample competition in the properly defined product and geographic markets.  The properly defined market should comprise all urology services offered throughout Puerto Rico, not just those offered to the Mi Salud population in the Western region of Puerto Rico, where the challenged agreement applied.

32.    At all relevant times, there were other buyers for urology services, even within the "Western Puerto Rico" region, including under private or commercial insurance plans, such that substantial market foreclosure cannot be established.

33.    Puerto Rico's Medicaid program is a managed care model, and it affords the managed care organizations contracted by ASES control over the composition of provider networks to service GHP beneficiaries. This control is intrinsic to the model of care required by ASES and the laws and regulations that govern Puerto Rico's Medicaid program.

34.    Selective contracting is a prominent and important characteristic of managed care to reduce health-care costs. By steering a large volume of patients to a single or several providers through the

operation of a "narrow network," the health plan can induce those providers to lower their price to the plan.

35.    At all relevant times, the Government Health Plan required that the managed care organizations under contract with ASES, such as Triple-S Salud, Inc., seek to lower costs and control usage through, *inter alia*, the creation of a preferred provider network or PPN.

36.    The allegations in the Amended Complaint show that this is not a challenge to TSS' activities in the regular health insurance market, but a challenge to its decisions in the highly regulated, government-run GHP. In the GHP framework, the insurance companies do not act as independent market actors, but as delegates of a government instrumentality. This delegation occurs pursuant to a clearly articulated policy authorized by the state legislature, and the policy is actively supervised by an instrumentality of the Commonwealth of Puerto Rico, the ASES.

37.    Per federal regulation, Triple-S is not forced to contract with all available health providers; rather, Triple-S must maintain a network that is sufficient in number and types of providers.

38.    Puerto Rico's GHP works under a managed care model, and it affords the managed care organizations contracted by ASES control over the composition of provider networks to service GHP beneficiaries.

39.    Under the current GHP-Vital model for the GHP, beneficiaries may seek services from providers located anywhere in Puerto Rico, and each of the five (5) insurance companies who have contracts with ASES to participate in the Vital program, must maintain island-wide provider networks.

40.    Plaintiffs are board-certified urologists who are authorized to engage in the practice of medical urology in Puerto Rico. The contract between Urologist and Triple-S does not contain provisions that exclude Plaintiffs (or other urologists) from providing their urology services in Puerto Rico. Plaintiffs' licenses are not limited to the Western Region. They are licensed to practice their

profession throughout Puerto Rico. Nothing prevents Plaintiffs in this case from practicing elsewhere in Puerto Rico.

41.    Providers who are not part of the PPN for a particular specialty can nonetheless provide services to the population assigned to that PPN by requesting preauthorization or as emergency medical services.

42.    Plaintiffs cannot establish that the "exclusive agreement" at issue was an impermissible concerted action to reach an unlawful arrangement; that the arrangement was meant to or resulted in an unreasonable restraint of trade; or that the defendants engaged in predatory or anticompetitive conduct.

43.    Given its short term of duration and that the parties retained the right to terminate the agreement without cause upon sufficient notice, the agreement at issue poses a *de minimis* constraint on competition.

44.    The 2015 agreement between Triple-S and Urologist that Plaintiffs challenge in the Amended Complaint, stipulated an initial term of one year (from the date of execution, on April 1, 2015, to June 30, 2016) that was renewable for additional one-year terms, depending on the provider's continued compliance with Triple-S's qualification criteria.

45.    The 2015 agreement between Triple-S and Urologist that Plaintiffs challenge in the Amended Complaint provided for (a) non-renewal by either party without cause, upon 90-days' notice and (b) termination by either party without cause, upon 30-days' notice.

46.    During the relevant period, Plaintiffs have been part of Triple-S' network of providers in its commercial and Medicare Advantage lines of business.

47.    Plaintiffs lack standing because they have failed to allege "antitrust injury." Antitrust law protects only harm to competition, not to competitors. Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1964).

48.   The Amended Complaint contains no well-pled allegations of harm to competition, only purported harm to Plaintiffs.

49.   Plaintiffs are not a customers or competitors of Triple-S. Courts routinely deny standing to plaintiffs who are not competitors or customers of the defendant.

50.   Plaintiff's allegations concerning a purported conspiracy between defendants are insufficient to state a claim under Section 1 of the Sherman Act. This is because Plaintiffs failed to sufficiently allege the elements of a Section 1 cause of action, namely, concerted action and a plausible agreement in restraint of trade. Pleading the existence of an exclusive contract between an insurer and a provider is not enough, in and of itself, to allege an antitrust violation. Plaintiffs also failed to allege a plausible boycott or refusal to deal cause of action.

51.   Plaintiff's allegations are also insufficient to state a monopolization claim under Section 2 of the Sherman Act. The Amended Complaint contains no allegations of monopolization or of any of its elements, namely, that Triple-S has monopoly power; that Triple-S has engaged in impermissible exclusionary practices with the design or effect of protecting or enhancing its monopoly position; that Triple-S engaged in predatory conduct; specific intent to monopolize; and a dangerous probability of success in achieving monopoly power.

52.   Because claims brought under Puerto Rico's antitrust laws are analyzed exactly in the same way as claims under the Sherman Act, Plaintiff's claims for violation of Puerto Rico's antitrust laws are defective for the same reasons as its Sherman Act claims.

53.   The claims brought under Articles 1802 and 1803 of the Puerto Rico Civil Code fail as a matter of law, because the only breach of legal duty Plaintiffs allege are the purported violations of the antitrust statutes. But since Plaintiffs did not plead plausible violations of the Sherman Act and the Puerto Rico antitrust statutes, no liability can arise under these Civil Code provisions either. At any rate, the statute of limitations for causes of action under Articles 1802 and 1803 is one year

since the cause of action accrued. Here, however, the Amended Complaint was filed more than four years after that date and, therefore, any cause of action under these provisions is time-barred.

54.    Upon information and belief, Plaintiffs failed to mitigate damages.

55.    Plaintiffs purported claims are barred, in whole or in part, by the equitable doctrines of unclean hands, laches, waiver, estoppel, *res judicata* and/or issue preclusion.

56.    Plaintiffs' complaint is frivolously brought and should be dismissed. The court should grant all defense costs, expenses, and reasonable fees to Triple-S.

Triple-S has insufficient information upon which to form a belief as to whether it has additional, unstated affirmative defenses. Triple-S reserves its right to assert additional affirmative defenses subject to the results of discovery proceedings.

## **PRAYER FOR RELIEF**

WHEREFORE, Triple-S respectfully prays for judgment as follows:

1)    That the Court dismiss the Amended Complaint, as it may hereafter be amended, <u>with prejudice</u>, without awarding Plaintiffs any relief, and enter judgment in favor of Defendants on all of the claims asserted by Plaintiffs.

2)    That the Court award Triple-S and defendants such other further and necessary relief as it deems just in accordance with the evidence adduced by the parties in this action; and

3)    That costs and attorney's fees be levied against Plaintiffs.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 2nd day of February, 2023.

CERTIFICATION: Today I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties who have appeared.

**ROMAN NEGRÓN LAW, PSC**
Attorneys for Triple S Salud, Inc.

Citi Towers, Suite 1401
252 Ponce de León Ave.
San Juan, PR  00918
P.O. Box 360758
San Juan, PR  00936
Tel. (787) 979-2007


*s/Luis R. Román-Negrón*
Luis R. Román-Negrón
USDC-PR 225001
lrn@roman-negron.com