IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROBERTO VÁZQUEZ-RAMOS, et al. | CIVIL NO. 19-1527 (SCC/MEL) |
| Plaintiffs | |
| V.S. | ANTITRUST |
| TRIPLE-S SALUD, INC., et al. | (JURY TRIAL IS REQUESTED) |
| Defendants | |

**OPPOSITION TO DEFENDANTS' LATEST MOTION TO COMPEL DISCOVERY AND FOR THE IMPOSITION OF SANCTIONS (Docket Number 173)**

TO THE HONORABLE COURT:

COME NOW plaintiffs, through the undersigned attorneys and very respectfully SETS FORTH and PRAY:

I. INTRODUCTION

Pending before this Honorable Court is defendants' **third** motion to compel discovery, filed late on Friday December 13, 2025 and captioned as an "Additional" such motion (docket number 173). In an effort to portray plaintiffs as recalcitrant litigants, plaintiffs cast this matter (which mainly involves document requests made during the October 2024 depositions) as an answer to interrogatories issue, despite the matter not being raised as such in the previous motions to compel to which have already taken up so much of the Court's time. Curiously enough, yesterday plaintiffs reminded codefendant Triple-S that it owes information requested during its Fed. R. Civ. P. 30(b)(6) deposition, which took place **back in December 2023**. Having said this,

we are not interested in anything other than moving the case forward and thus we proceed address defendants' latest request[1].

As reflected by the minute of the December 18, 2024 motion hearing (docket number 184), plaintiffs were granted until today to oppose this motion, which we will now do by separately addressing the two reliefs sought by the defendants, namely: "that (1) Plaintiffs be compelled to produce those complete patient records, and (2) Defendants be allowed to depose the newly identified persons with knowledge".

## II.     DISCUSSION

A) MEDICAL RECORDS

During their depositions plaintiffs were asked about how it is that they know that learned that physical castrations of prostate cancer patients, in lieu of more expensive chemical castrations, had increased after defendants entered into the challenged exclusive dealing arrangement, as pled at paragraph 3.21 of the Amended Complaint (docket number 45). Three of the plaintiffs testified that they had received and treated such castrated patients while plaintiff Dr. Juan Colón testified that he had been present during a deposition taken in another case during which he said that Dr. Rodríguez-Blázquez made admissions in this regard. Defendants asked to, pursuant to the confidentiality agreement between the parties, the medical records for such patients be produced, and plaintiffs agreed to do so.

---

[1] At footnote number one of defendants' motion, said parties rehash something that came up after the appellate oral argument upon which one of the undersigned attorneys was asked to retract certain expressions under threat of a Fed. R. Civ. P. 11 sanctions request. The undersigned attorney answered defendants' communication (which read as an invitation to debate the finer points of oncological urology) by reaffirming his expressions before the Court and acknowledging defendants' right to seek any relief that it thought appropriate. No request for sanctions was filed. Again, we refuse to waste time on such matters, particularly where, as will be demonstrated later in this motion, the fact that chemical castrations were a consideration for the exclusive dealing arrangement stems from the plain language of a document created by plaintiffs themselves.

The parties have agreed for these records to be produced on or before **January 24, 2025**, a term that is being included in the joint proposal being filed today, which **moots** out this first part of the inquiry.

B) DEPOSING CASTRATED PATIENTS IN AN ANTITRUST CASE

Plaintiffs argue that the supposedly need to depose castrated patients "to test the assumptions made by Plaintiffs about those individual's quality of life", inexplicably adding that they would "now announce additional expert testimony to sustain the medical necessity of the procedures performed in each individual case". Docket Number 173, at p. 10. If someone had ever only read from this case was Docket Number 173, they could not be faulted for thinking that this is a **medical malpractice** action instituted **by patients** who underwent physical castration and claim to have suffered actionable damages. Of course, this case was brought by specialized physicians arguing that their exclusion from a particular healthcare market that obliterated competition within that market in violation of antitrust law.

The **only** reason why castrations are **tangentially** mentioned in the pleadings is because, at numbered paragraph 6[2] of a document from April 1, 2015, titled "Letter of Intent and Confirmation of Preliminary Agreements" (translation ours)[3], the parties agreed on what was the historical cost of "J codes" (medical insurance parlance for chemical castrations) and also agreed to **split the savings** generated through "the methodology agreed by the parties" (translation ours). See **Exhibit 1**. This was one of the considerations upon which all other urology providers received cancellation letters as per numbered paragraph 4 in that same document.

Because plaintiffs eventually learned that the number of castrations within the region had increased, it was so pled at paragraph 3.21 of the Amended Complaint. Naturally, defendants have

---

[2] Not all paragraphs in this document are numbered, some have "bullet points".
[3] A certified translation of this document is being procured.

inquired about the source of this knowledge and plaintiffs have answered that question under oath. The request for the medical records is therefore relevant **only** as corroboration of plaintiffs having received such patients as testified in their depositions.

Because of the reasons stated in the previous paragraph, when agreeing to produce the records on a confidential basis, plaintiffs' attorneys announced for the record that they would be **redacting** the names and personal data identifiers of those patients. Rather than pushing back on the aforementioned condition, defendants' counsel **explicitly** said that he was **not interested in the names of these patients** and also agreed to the other redactions, which is in stark contrast with the representations at docket number 173, as one does not depose nameless individuals. This particular colloquy may be found at page 66, lines 15-24 and page 67, lines 1-21 of the transcript for Dr. Javier Colón's October 24, 2024 deposition. We would attach those pages were it not for the fact that the parties agreed that defendants would take their depositions in Spanish language contingent upon said parties commissioning certified translations of the transcripts. Only the Spanish language translations were recently produced, and we see little sense in paying for the translation of a document that will eventually be translated anyway. This being said, we will translate and submit the documents in the unlikely event that defendants chose to dispute our description of this particular exchange.

At the end of the day, it was defendants who chose to make the castration issue part of their covenants. To what extent, if at all, those covenants were carried out does not obviate the fact that defendants committed them to writing. More importantly, how many patients were physically castrated or how medically justified those proceedings might have been does not make it any more or less likely that antitrust violation has been transgressed. Whatever cause of action, if any, those patients their recourse would be to file suit -if so inclined- but that is utterly irrelevant here.

4

During the December 18, 2024 motion hearing, every time the issue of relevance was raised, defendants' response was to posit that discovery relevance is "broad". This of course is true, especially when contrasted to relevance at trial as per Fed. R. Evid. 401. However as observed by a sister court within our circuit "[t]here is no doubt that discovery is broad, but its breadth is not limitless". Emhart Industries, Inc. v. New England Container Company, Inc., 2013 U.S. Dist. LEXIS 160976 (D.R.I. 2013). In other words, "[t]he discovery rules are not intended as a broad license to mount serial fishing expeditions". Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 59 (1st Cir. 2006). The Supreme Court has long recognized that while discovery rules "are to be accorded a broad and liberal treatment", there are limitations and, particularly some of those limitations "come into existence **when the inquiry touches upon the irrelevant** or encroaches upon the recognized domains of privilege". Hickman v. Taylor, 329 U.S. 495, 507-508 (1947) (emphasis added).

Fed. R. Civ. P. 26(b)(1), neatly defines discovery relevance as:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

When ran through this basic formulation, the patients themselves may have privileges to raise under Fed. R. Civ. P. 45, if and when they are subpoenaed to disclose intimate details regarding their health in a federal antitrust case, which plaintiffs admittedly have no standing to raise. The hard, undeniable fact that the specifics regarding the health conditions of these patients is not an element of plaintiffs' claim (i.e., something that they would have to prove to prevail) nor is it a defense by any of the defendants that would allow them to avoid antitrust liability.

5

Even if somehow -and we frankly cannot fathom that possibility- defendants were able to establish the health of these non-party patients as being truly germane to a claim or defense (i.e., beyond of something that is merely mentioned in the pleadings), it would still need to clear the "burden or expense of the proposed discovery outweighs its likely benefit" language in Rule 26(b)(1). The sheer logistics of defendants subpoenaing these individuals[4], coordinating and taking these depositions would almost certainly exceed the April 4, 2025 deadline that the parties have agreed for deposing experts and that defendants are pushing as a deadline for these depositions as well, which also assumes that all of them are still alive and within this jurisdiction. Also, to do this, defendants would need to do an about face on their position during the October depositions and demand the name and personal identifiers that they stated that they were not interested in. Depending on the sophistication, means and resources[5] of these patients may move to quash their subpoenas, which would further require the Court's involvement. At the end of the day, whatever information regarding these individuals' health is gathered during these depositions will not aid an eventual jury in deciding the merits of this antitrust case.

In sum, plaintiffs alleged that they knew about an increase of physical castrations and three of them answered that they learned about that matter through their treatment of patients. To ask for the medical records that would verify such interactions is certainly fair game, as it would go to the truthfulness of the assertion. To take it beyond that limited relevance and open the gates into inquiries concerning the appropriateness of diagnostics and/or treatments received by those patients, from a medical standpoint. Such discovery would clearly run afoul Fed. R. Civ.

---

[4] It goes without saying that plaintiffs are under no duty or even in a position to produce these witnesses.
[5] To the extent that these patients are still on the Puerto Rico Government's health insurance plan, they would meet certain income criteria that would make it unlikely for them to exercise their right to be represented by counsel on such proceedings.

P. 26(b)(1), as it would be irrelevant, useless and cumbersome. Defendants motion is grounded on generalities that do nothing to avoid this conclusion.

**WHEREFORE** it is respectfully requested from this Honorable Court that defendants' latest motion to compel be hereby **DENIED**.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the instant document has been filed with the Court's CM/ECF System, which will simultaneously serve notice on all counsels of record, to their registered e-mail addresses. Any non-registered attorneys and/or parties will be served via regular mail.

In San Juan, Puerto Rico this 10th day of January, 2025.

**RESPECTFULLY SUBMITTED,**

**M.L. & R.E. LAW FIRM**
Cobian's Plaza, Suite 404
1607 Ponce De León Avenue
San Juan, Puerto Rico 00909
Tel (787) 999-2979

*S/Jorge Martínez-Luciano*
**JORGE MARTÍNEZ-LUCIANO**
USDC-PR Number 216312
e-mail: jorge@mlrelaw.com

*S/Emil Rodríguez-Escudero*
**EMIL RODRÍGUEZ-ESCUDERO**
USDC-PR Number 224312
e-mail: emil@mlrelaw.com