IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ROBERTO RAMOS VÁZQUEZ, et al., | |
| Plaintiffs, | |
| v. | CIVIL NO.: 19-1527 (SCC) |
| TRIPLE-S SALUD, INC., et al., | |
| Defendants. | |

**ORDER**

On February 3, 2025, defendants Urologics, LLC, Urologist, LLC and Dr. Héctor Rodríguez Blázquez (collectively, the "Urologics Defendants") and Triple-S Salud, Inc. ("Triple-S") (collectively, "Defendants") filed an appeal or, in the alternative, a motion for reconsideration of the undersigned's Order at ECF No. 202 regarding Defendants' motion to compel and for sanctions at ECF No. 173. ECF No. 213. Plaintiffs filed a response in opposition. ECF No. 214. The appeal was denied without prejudice. ECF No. 216. For the following reasons, Defendants' motion for reconsideration (ECF No. 213) is GRANTED.

The issue before the Court involves the use of evidence regarding prostate cancer patients treated by Defendants. Specifically, evidence used to support paragraph 3.21 of the Amended Complaint, which reads as follows:

> Plaintiffs have learned that since defendants entered into their monopolistic arrangement, the number of prostate cancer patients treated by Rodríguez Blázquez/Urologics/Urologist that have been physically castrated in lieu of more effective, albeit more expensive, drug treatment has increased resulting in an inferior quality of life for these patients and in more money in defendants' bank accounts.

ECF No. 45 at 10. On March 17, 2023, Plaintiffs were asked in Interrogatories to identify each individual patient they were referring to in paragraph 3.21, and Plaintiffs' response to that

interrogatory was that their allegation about reduced quality of services did not allude "to any particular individual but rather to all patients who are subjected to physical castration without being advised that chemical castration was also an option covered by their insurer." ECF No. 127-4 at 3-4. During depositions in October of 2024, Plaintiffs Dr. Luis Muñiz and Dr. Javier Colón represented that there were individual patients who had experienced the allegations contained in paragraph 3.21. As a result, Defendants requested, and counsel for Plaintiffs agreed to provide, the medical records for such patients, subject to the Confidentiality and Protective order in place. ECF No. 173 at 4-5. On November 14, 2024, Plaintiffs produced two lists of twelve patients in total who had received "bilateral orchiectomies" or surgical castrations. ECF No. 173-2; 173-3. ECF Nos. 173-2; 173-3. However, these lists were provided after the Court's extended deadline to complete fact witness depositions of October 31, 2024 had elapsed. ECF No. 158.

As a result, on December 13, 2024, Defendants moved to compel complete patient records for the identified individuals and for sanctions. ECF No. 173. Defendants also argued that they should be allowed to depose the newly identified persons with knowledge. *Id*. During a hearing to discuss a different set of motions, the Court ordered Plaintiffs to produce various documents and ordered the parties to submit a joint motion regarding outstanding deadlines. ECF No. 177. In said joint motion, Plaintiffs reintroduced their arguments from ECF No. 173 regarding deposing the patients. ECF No. 194. In reviewing Defendants' motion to compel, the Court deemed the motion moot in part because the patient records for the twelve patients was produced on or before the January 24, 2025. ECF No. 202 at 1. However, the Court denied the request to take additional fact witness depositions or extend such deadline. *Id*. at 2. In their motion for reconsideration of this Order, Defendants argue that the taking of depositions was offered as an alternative to Defendants' request for sanctions, and that the Court did not consider the other sanctions request. ECF No. 213 at 2. Defendants request that the Court either (1) strike Paragraph 3.21 of the Amended Complaint

2

or (2) disallow the use of these patients' cases (i.e., the fact of their specific bilateral orchiectomies or physical castrations) to support the same, pursuant to Rule 37(c)(1). ECF No 173.

Defendants first requested information regarding the identity of individual patients referred to in paragraph 3.21 on March 17, 2023. ECF No. 127-4 at 3-4. Defendants did not receive said information until more than a year later in November of 2024. ECF No. 173-2; 173-3. ECF Nos. 173-2; 173-3. Moreover, Defendants did not receive complete patient records for the identified individuals until January of this year. ECF No. 192 at 2-3. Although Plaintiffs have finally produced the records, the question still remains as to whether these patients were given a choice between surgical and chemical castration and experienced a quality of life inferior to what would have resulted had another viable option been selected. Regardless of whether this information is in the possession of Defendants, Defendants are entitled to seek corroboration of that information by asking the patient themselves if they were given the option and what is their current quality of life. However, because this information was produced and received by Defendants after the October 31, 2024 deadline to conduct fact witness depositions, it would be prejudicial to Defendants if, on the one hand, Plaintiffs' doctors are allowed to testify what these patients allegedly told them, and Defendants are not allowed to depose them.

Moreover, Plaintiffs themselves admit that allegation 3.21 of their complaint is not the thrust of their antitrust case. In Plaintiffs' response to Defendants' motion to compel and in Plaintiffs' response to Defendants' motion for reconsideration, Plaintiffs stress that the allegation is "tangential," "inconsequential," or otherwise not useful in deciding the merits of an antitrust case. For example, Plaintiffs argue that "castrations are **tangentially** mentioned in the pleadings" and "how many patients were physically castrated or how medically justified those proceedings might have been **does not make it any more or less likely that [an] antitrust violation has [occurred]**." ECF No. 192 at 3-4 (emphasis added). *See also* ECF No. 214 at 1-2 ("Whatever

3

information would have out of such depositions, assuming they are logistically viable, would ultimately have **zero effect** in the assessment of whether a federal antitrust violation has occurred in the instant case.") (emphasis added); ECF No. 214 at 4 ("[T]he relief sought by the parties [in the form of an order striking Paragraph 3.21 of the Amended Complaint and/or disallowing the use of the late-disclosed patients' cases or identities as evidence to support those allegations] **is ultimately inconsequential**.") (emphasis added); ECF No. 214 at 6 ("At the end of the day, whatever information regarding these individuals' health was to be gathered during these depositions **would not aid an eventual jury in deciding the merits of this antitrust case.**") (emphasis added).

Therefore, taking into account that the patient identities were revealed more than one year after they were originally requested, and that the identities and records were produced after the fact witness deposition deadline had elapsed, and that Plaintiffs themselves have acknowledged this is not a material component of their case, Plaintiffs shall be precluded from introducing at trial evidence in support of the allegations in paragraph 3.21 of the complaint.

Accordingly, Urologic Defendants' motion for reconsideration (ECF No. 213) is GRANTED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 3rd day of April, 2025.

s/Marcos E. López  
U.S. Magistrate Judge
